# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 15-1458V
### (to be published)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | |
| B.E., *a minor, by and through his* * | |
| *parent and natural guardian*, * | |
| TARA EVANS, * | |
| * | Special Master Oler |
| Petitioner, * | Filed: November 13, 2019 |
| * | |
| v. * | Attorneys' Fees and Costs; |
| * | Reasonable Basis |
| SECRETARY OF HEALTH AND * | |
| HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | |

*Maximillian J. Muller, Esq.*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Heather Lynn Pearlman*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On December 2, 2015, Tara Evans ("Ms. Evans" or "Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program"),[2] alleging that her son, B.E., developed a partial intussusception as a result receiving a rotavirus vaccination on October 20, 2014. Petition ("Pet."), ECF No. 1. On November 28, 2018,

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

I held an entitlement hearing on this matter, after which, on February 26, 2019, I issued my decision denying Petitioner entitlement to compensation. ECF No. 50.

On April 25, 2019, Petitioner filed this Motion for Attorneys' Fees and Costs.[3] Fees Application ("Fees App."), ECF No. 52. Petitioner requests attorneys' fees for the work performed by Muller Brazil, LLP, in the amount of $45,680.60, and costs in the amount of $27,903.17, totaling $73,583.77. *Id*. Respondent opposes the motion and contends that Petitioner failed to establish a reasonable basis for her claim. Respondent's Response ("Fees Resp."), ECF No. 53. On May 13, 2019, Petitioner filed a reply. Petitioner's Reply ("Fees Reply"), ECF No. 54. For the reasons set forth herein, Petitioner's Motion for Attorneys' Fees and Costs is **GRANTED IN PART**.

### I.   Factual History

#### A.  B.E.'s Health Prior to the Allegedly Causal Vaccination

B.E. was born on August 8, 2014. Ex. 1 at 7. On September 15, 2014, Petitioner brought B.E. to the Primary Care Clinic at Pagosa Springs Medical Center (hereinafter "Pagosa Clinic") with complaints of congestion and a cough. *Id.* Petitioner told Dr. Bricca that B.E. was more "colicky." *Id.* Petitioner stated that he cried and drank formula constantly from 5:00 pm until 9:00 pm. *Id.* Dr. Bricca recommended that Petitioner feed B.E. less in the afternoon and evening, and that she try diluting his formula. *Id.* at 8.

B.E. had a well exam on October 13, 2014. Ex. 2 at 35. The notes from this visit indicate that B.E. was weaned from breastmilk to Gentlease formula, and that he had become colicky. *Id.* When B.E.'s formula was switched to Nutramigen, his colic improved. *Id.* The notes with respect to elimination indicate, "[s]tringy, yellow stools, with some darker. Only Nutramigen for … about 3 weeks. Strange stools are new." *Id.*

On October 20, 2014, B.E. received his rotavirus vaccination at the Pagosa Clinic. Ex. 1 at 17.

#### B.  B.E.'s Health after the Allegedly Causal Vaccination

On October 27, 2014, Petitioner brought B.E. to the Pagosa Clinic with complaints of persistent, abdominal pain and blood in his stool for two days. Ex. 1 at 11. Petitioner told the provider that B.E.'s stool was loose and green, containing blood and clots. *Id.* The notes from this visit mention that B.E. received the rotavirus vaccine one week prior, had a temperature of 100.4 after his vaccination, but had been afebrile since. *Id.* The notes further state that B.E. was fed with Nutramigen and had stomach problems since he stopped breastfeeding. *Id.* On this same

---

[3] Petitioner filed the attachments to her Motion for Fees Application as Exhibits "A" and "B." For clarification, I will refer to Petitioner's motion as "Fees App." and cite to the page numbers of Petitioner's motion in accordance with the appropriate exhibit number and the generated pagination.

date, B.E. had an abdominal x-ray (Ex. 1 at 12) and an abdominal ultrasound (Ex. 1 at 13). Both tests yielded normal results.

On October 28, 2014, Petitioner brought B.E. to the Pagosa Springs Medical Center for a follow-up appointment. Ex. 7 at 164. Since his appointment the prior day, Petitioner reported that B.E. had a bowel movement with some blood present. *Id.* The "Gastrointentinal" portion of the "Review of Systems" section of the record notes "Diarrhea, [n]o nausea, [n]o vomiting." *Id.*

B.E. visited Pediatric Partners of the Southwest on October 30, 2014. Ex. 2 at 34. Petitioner reported a continuation of B.E.'s recent gastrointestinal symptoms. He was stooling five to six times per day, and his stool was described as diarrhea. *Id.* Most recently, B.E. was having episodes of screaming at night for 10-15 minutes. *Id.* The notes indicate that B.E. had "[p]robable vaccine-strain rotavirus illness, now improving." *Id.* at 35. Dr. Zemach prescribed Neocate infant powder to replace B.E.'s formula. *Id.*

On November 7, 2014, B.E. presented to the Mercy Hospital Emergency Room because of blood in his stool. Ex. 2 at 25. The history of present illness section of the record indicates that B.E. "was well until stopping nursing at age 2-3 weeks." *Id.* He changed to Gentlease formula "after which he became 'colicky,' with 'screaming all day long.'" *Id.* When B.E. was changed to Nutramigen "he was 'back to normal.' Stools were yellow and brown, slightly stringy." *Id.* The notes indicate that after his rotavirus vaccination, B.E. developed bloody stools within three days. *Id.* The record further states, "4-5 days ago: Began Neocate formula => no change, other than decrease in stool frequency." *Id.* at 26. An abdominal x-ray performed that same day yielded normal results. *Id.* at 33. B.E.'s blood work, also tested on that day, returned an albumin level of 3.5 g/dL. *Id.* at 32. This level is below the normal range of 3.8-5.4 g/dL. *Id.*

On November 12, 2014, B.E.'s stool study was positive for occult blood (Ex. 2 at 47) and negative for rotavirus (Ex. 2 at 48).

On December 10, 2014, B.E. presented to the Pagosa Springs Medical Center for his four-month well exam. Ex. 7 at 134. The exam history indicated that B.E. "had a reaction to rotavirus in which he experienced bloody diarrhea. … Plan is to avoid further immunization with the rotavirus." *Id.* The well exam was unremarkable for any gastrointestinal problems. *See Id.* at 134-35.

On February 9, 2015, B.E. visited the Pagosa Clinic for his six-month well exam. Ex. 1 at 26. The well exam was unremarkable for any gastrointestinal problems. In fact, "no parental concerns" was listed under the elimination section of the well child history. *Id.* B.E. was noted to be a "[h]ealthy appearing 6 month old male, meeting developmental milestones." *Id.* at 27.

On May 8, 2015, B.E. visited Dr. Zemach. Ex. 2 at 21. The chief complaint from this encounter was that B.E. "has been constipated since rotavirus given at 2 month appointment." *Id.* The record indicates that B.E. was having hard stools that made him bleed. *Id.* The record further states that B.E. went off Neocate to Nutramigen and had been drinking "straight cow's milk for about a month." *Id.* An abdominal x-ray performed on that day was normal except for the presence

of "moderate retained stool throughout the colon." *Id.* at 23. Dr. Zemach recommended Miralax for B.E.'s constipation. *Id.* at 22.

On May 26, 2015, Petitioner brought B.E. back to Dr. Zemach for his nine-month well exam. Ex. 2 at 19. B.E. was having hard stools alternating with soft ones. *Id.* Dr. Zermach increased B.E.'s dosage of Miralax from one teaspoon to one tablespoon per day. *Id.* at 20.

On June 7, 2015, B.E. visited the Pagosa Springs Medical Center Emergency Department. Ex. 1 at 34. Petitioner described that B.E. seemed to be in pain; he was pulling his legs up to his chest, thrashing around in bed, and biting his blanket. *Id.* B.E. had a fever of 101.5 ºF and "hypoxia down to 85% on room air." *Id.* B.E. was diagnosed with pneumonia. *Id.* B.E. had another abdominal x-ray during this visit, which revealed normal results except that his colon was retaining moderate stool. *Id.* at 37.

On July 15, 2015, B.E. had a barium enema due to his chronic constipation. Ex. 9 at 23. The exam revealed a "moderate amount of retained fecal material throughout the length of the colon" but was otherwise normal. *Id.*

B.E. presented to Pediatric Partners of the Southwest on August 27, 2015 due to blood and slime in his stool the night prior. Ex. 2 at 7. Petitioner reported that B.E. had a fever of 102ºF the previous evening. *Id.* B.E.'s abdomen was described as "bulging moderately, firm, not hard". *Id.* at 8. The physician ordered an abdominal x-ray, which yielded normal results. *Id.* at 9. On August 29, 2015, B.E.'s albumin level was reported as low at 3.6 g/dL. *Id.* at 7.

On September 2, 2015, B.E. presented to the Section of Pediatric Gastroenterology, Hepatology, and Nutrition at Children's Hospital Colorado. Ex. 2 at 41. This history section notes that B.E. had had difficulty stooling, which started after he received his rotavirus vaccination. *Id.* He had been taking Miralax, ExLax, and mineral oil, but Petitioner stopped those medications due to blood in B.E.'s stools. *Id.* Dr. Liu's impression was that B.E. had chronic retentive constipation. *Id.* at 42. He recommended restarting Miralax and ExLax. *Id.* On this same date, B.E. also underwent allergy testing. *Id.* at 5. When exposed to the cow's milk allergen, B.E.'s reaction tested as "normal." *Id.*

B.E. was admitted to the ER at Northwest Texas Hospital on December 14, 2015 due to difficulty breathing and pale skin color. Ex. 4 at 2. The family was driving from California to Oklahoma and they stopped in Amarillo, Texas due to B.E.'s condition. *Id.* B.E. was noted as a picky eater, who drank between four and five 10-ounce bottles of whole milk per day. *Id.* at 3. B.E.'s blood work revealed critically low hemoglobin levels (Hgb), critically low hematocrit (Hct), along with a low red blood count (RBC), a low mean corpuscular volume (MCV), a low mean corpuscular hemoglobin concentration (MCHC), and a high white blood count (WBC). *Id.* He had tachycardia and was in mild respiratory distress. *Id.* at 5. Due to his abnormal blood levels, B.E. received a blood transfusion. *Id.* He was discharged on December 16, 2015 and his parents were advised to exclude dairy from B.E.'s diet. *Id.* at 22.

Although additional, more recent medical records were filed, they were not discussed by the experts, and were not relevant to this analysis.

## II.     Procedural History

The case was initially assigned to Special Master Gowen on December 4, 2015 (ECF No. 5). Petitioner filed medical records, and then her statement of completion (ECF No. 12). This case was reassigned to now-retired Special Master Hastings on February 22, 2016 (ECF No. 10).

Respondent filed his Rule 4(c) Report on June 3, 2016, stating that Petitioner's case "is not appropriate for compensation," and that the Petition "should be dismissed for failure to demonstrate entitlement to compensation." Resp't's Report at 1-2, ECF No. 16. Respondent asserted that Petitioner had not provided enough evidence or a plausible medical theory linking the vaccine to B.E.'s injuries. *See generally* Resp't's Report.

Petitioner submitted her expert report from Dr. John Santoro on November 18, 2016. Ex. 5, ECF No. 23. Respondent filed his expert report from Dr. Chris Liacouras on February 20, 2017. Ex. A, ECF No. 27.

This case was reassigned to my docket on December 5, 2017. ECF No. 32. Subsequently, I held a status conference on March 13, 2018. *See* Minute Entry for 3/13/2018. In that conference, Respondent noted that there was a discrepancy between the injury alleged in the Petition and the injury proposed by Petitioner's expert. ECF No. 34. Petitioner's counsel represented that B.E.'s alleged injury was a partial intussusception. *Id*. I directed Petitioner to file an amended Petition by April 12, 2018, reflecting the change in alleged injury. *Id*.

Petitioner filed her Amended Petition on April 12, 2018. ECF No. 37. On July 25, 2018, and October 15, 2018, Petitioner filed additional medical records. ECF No. 38; ECF No. 39. On October 24, 2018, Petitioner filed medical literature in support of her expert report and her amended position alleging that B.E. suffered from a partial intussusception following his October 20, 2014 rotavirus vaccination. ECF No. 40; *see also* ECF No. 37.

The parties filed their pre-hearing submissions on October 26, 2018. ECF No. 41; ECF No. 42; ECF No. 43. I held an entitlement hearing in this matter on November 28, 2018. *See* Minute Entry for 11/28/2018. The parties both elected not to file post-hearing briefs.

On February 26, 2019, I issued a decision denying entitlement. *See generally* Decision Denying Entitlement ("Decision"). I found the Petitioner failed to carry her burden in showing B.E. suffered a partial intussusception and that his injury was caused by the vaccination he received. *Id*. Petitioner filed a Motion for Attorneys' Fees and Costs on April 25, 2019. Fees App, ECF No. 52. On May 6, 2019, Respondent filed a response opposing the motion on grounds that Petitioner had failed to establish a reasonable basis for the claim. Fees Resp., ECF No. 53. Petitioner filed a reply on May 13, 2019. Fees Reply, ECF 54.

The matter of final attorneys' fees and costs is now ripe for a decision.

### III.     Parties' Arguments

Respondent asserts that Petitioner has failed to establish a reasonable basis for her claim and is not eligible for an award of attorneys' fees and costs. Fees Resp. at 6. Respondent primarily states that the medical records did not support Dr. Santoro's expert opinion. Secondly, Respondent asserts that the medical records did not indicate B.E. suffered an intussusception. *Id*. at 3-5.

Petitioner replied stating reasonable basis did exist at the time she filed the petition. *See* Fees Reply. Specifically, Petitioner asserts that B.E. developed symptoms common to intussusception, and at least one of the treating physicians attributed B.E.'s symptoms to a vaccine-related illness. *Id*. at 4.

Respondent objected to an award of attorneys' fees to Petitioner's co-counsel, Ms. Bridget McCullough, because she did not take testimony at hearing. Fees Resp. at 5 n.4. Petitioner responded that at trial Ms. McCullough provided support through assisting with trial preparation, notetaking for lead counsel, actively providing support during the entitlement hearing, and aiding in development of direct and cross examination of witnesses. Fees Reply at 5.

### IV.     Applicable Law

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is mandatory where a Petitioner is awarded compensation; where compensation is denied, as it was in this case, the special master must first determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such requirement is a "subjective standard that focuses upon whether [a] petitioner honestly believed he [or she] had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as petitioners had an honest belief that their claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

Regarding the reasonable basis requirement, it is incumbent on petitioners to "affirmatively demonstrate a reasonable basis," which is an objective inquiry. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011); *Di Roma*, 1993 WL 496981, at *1. When determining if a reasonable basis exists, many special masters and U.S. Court of Federal Claims judges employ a totality of the circumstances test.[4] The factors to be considered under this test

---

[4] Judges on the U.S. Court of Federal Claims have affirmed instances when the special master employed this test or have remanded a decision when the special master did not. *Chuisano v. Sec'y of Health &*

may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-36V, 2018 WL 3032395, at *7 (Fed. Cl. June 4, 2018). This "totality of the circumstances" approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

The Federal Circuit has emphasized that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *See Simmons,* 875 F.3d 632 at 636. In interpreting *Simmons*, some judges have determined that an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa*, 2018 WL 3032395, at *7.

Unlike the good faith inquiry, reasonable basis requires more than just Petitioners' belief in their claim. *See Turner*, 2007 WL 4410030, at *6. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015). The evidence presented must be "sufficient to give the petitioner a reasonable expectation of establishing causation." *Bekiaris v. Sec'y of Health & Human Servs.*, No. 14-750V, 2018 WL 4908000, at *6 (Fed. Cl. Spec. Mstr. Sep. 25, 2018). Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity "fails to establish a reasonable basis for a vaccine claim." *Id; see also Chuisano*, 116 Fed. Cl. at 287.

Although "special masters have historically been quite generous in finding reasonable basis for petitions," *Turpin v. Sec'y of Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); *see Turner*, 2007 WL 4410030, at *6-7, the court expects counsel for Petitioner to make a pre-filing inquiry into the claim to ensure that it has a reasonable basis. *See Turner*, 2007 WL 4410030, at *6-7.

V. **Analysis**

A. **Good Faith**

Petitioner is entitled to a presumption of good faith. *See Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Respondent does not contest that the petition was filed in

---

*Human Servs.*, 116 Fed. Cl. 276, 288 (2014); *Graham v. Sec'y of Health & Human Servs*., 124 Fed. Cl. 574, 579 (2015); *Rehn v. Sec'y of Health & Human Servs*., 126 Fed. Cl. 86, 91-92 (2016); *Allicock v. Sec'y of Health & Human Servs*., 128 Fed. Cl. 724, 726 (2016); *Cottingham v. Sec'y of Health & Human Servs*., 134 Fed. Cl. 567, 574 (2017).

good faith. *See generally* Fees Resp. Thus, I find that Petitioner acted in good faith when filing this petition.

### B. Reasonable Basis

The reasonable basis standard is objective and requires Petitioner to submit some evidence in support of the claim alleged in the petition, such as medical records or expert opinions. The petition in this case alleges that on October 20, 2014, B.E. received the rotavirus vaccination, and thereafter suffered from symptoms of a partial intussusception. *See generally* Pet. For the reasons stated below, I find that a reasonable basis existed for filing this claim.

#### 1. Petitioner Provided an Expert Opinion Supporting her Claim

Petitioner submitted both an expert report and testimony at hearing from Dr. John Santoro that offered a theory of causation. Based on his knowledge, background, and experience, I qualified Dr. Santoro as an expert in gastroenterology at hearing.

B.E. presented to his physician on October 27, 2014, complaining of a two-day history of abdominal pain and bloody stools. Tr. at 27. In Dr. Santoro's opinion, B.E. suffered a partial intussusception five days after October 20, 2014, the date B.E. received his rotavirus vaccination. *Id.* Dr. Santoro based his opinion on "timing, symptoms, and rotavirus." *Id.* at 87. In other words, the fact that B.E. received a rotavirus vaccination and that he developed symptoms of abdominal pain and bloody stools five days later led Dr. Santoro to conclude that B.E. suffered a partial intussusception caused by his vaccination.

I find it reasonable for Petitioner to rely on Dr. Santoro's theory of partial intussusception. Dr. Santoro is a qualified expert with extensive experience in gastroenterology. His expert opinion, while ultimately not persuasive to me, was based on his interpretation of B.E.'s medical records. Specifically, Dr. Santoro interpreted B.E.'s symptoms of rectal bleeding and severe abdominal pain post vaccination as unusual symptoms for common constipation, making it more likely B.E. suffered a partial intussusception. Further, he was able to explain his theory of partial intussusception at hearing. *See* Decision at 6 ("Some intussusceptions…[y]ou just get a little segment inside the other bowel, and then it goes through peristalsis, and the bowel pulls apart and its gone."). Although I found Respondent's expert opinion to be more persuasive, Petitioner did offer a theory of causation. Therefore, I find it reasonable for Petitioner to proceed on her claim with Dr. Santoro's expert opinion.

#### 2. B.E.'s Physicians Considered Vaccine Causation

B.E.'s medical records include notations that suggest a possible link between the rotavirus vaccine and the onset of B.E.'s symptoms. For example, on October 27, 2014, seven days after the rotavirus vaccination, B.E.'s provider noted, "patient was given rotavirus vaccine one week previous, had a temperature of 100.4 degrees after vaccine but afebrile since then." Ex. 1 at 11. B.E. was presented again on October 30, 2014, for continued diarrhea and episodes of screaming at night for 10-15 minutes. Ex. 2 at 34. The notes from that visit stated, "[p]robable vaccine-strain

rotavirus illness, now improving." Ex. 2 at 35. Notably, at his December 10, 2014 visit, the physician directed B.E. to avoid the rotavirus vaccine in his notations which stated, "had a reaction to rotavirus in which he experienced bloody diarrhea. … Plan is to avoid further immunization with the rotavirus." *See* Ex. 7 at 134. Finally, on his September 2, 2015 visit, the physician also made the notation which stated, "[i]t started after getting Rotavirus." *See* Ex. 2 at 41.

The multiple notations in B.E.'s medical records indicate that several treating physicians considered a potential link between the rotavirus vaccine and the onset of B.E.'s symptoms. Ultimately, B.E.'s treating physicians did not diagnose him with intussusception. Nonetheless, more than one treating physician contemplated a potential vaccine-related illness.

In summary, Petitioner has provided the necessary evidence to establish that a reasonable basis existed for the filing and maintaining of her petition. She supported her petition with an expert opinion that provided a theory of causation, as well as medical records which indicate that B.E.'s treating physicians considered the possibility of a vaccine-related illness. As a result, I find that a reasonable basis existed in this case.

## VI. Awarding Attorneys' Fees and Costs

### A. Reasonable Attorneys' Fees

In her Fees App., Petitioner requested a total of $45,680.60[5] in attorneys' fees.

#### 1. Requested Hourly Rates

Petitioner requests compensation for her attorneys, Mr. Maximillian Muller and Ms. Bridget McCullough[6], of Muller Brazil, LLP. Petitioner requests the following hourly rates for work performed by Mr. Muller and Ms. McCullough from 2015 to 2019:

|  | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Mr. Maximilian Muller | $255 | $275 | $300 | $317 | $325 |
| Ms. Bridget McCullough | -- | -- | -- | $225 | $225 |

Petitioner also requests that paralegals of Muller Brazil, LLP, Ms. Michelle Coles, Ms. Maria Loecker, and Ms. Tereza Pavlacsek, be compensated for work performed from 2015-2017 at a rate of $125.00 per hour. Fees App. at 1.

---

[5] In the Fee App., Petitioner requested a total of $44,618.10 in attorneys' fees. Fees App. at 1. In her Fees Reply, Petitioner requested an additional $1,062.50, representing the additional fees incurred in order to prepare that document. Fees Reply at 7-8.

[6] In his Fees Resp., Respondent objected to an award of fees for Ms. McCullough. Fees Resp. at 5 n.4. While two attorneys are not usually required throughout the pendency of a case, I find the employment of co-counsel in preparation for and during trial to be reasonable. Thus, I will award Ms. McCullough fees at the rates discussed above.

9

2. Hourly Rates Awarded

Mr. Muller's requested hourly rates for work performed between 2015-2017 have been previously found to be reasonable in the Vaccine Program. *See Poulignot-Gartner v. Sec'y of Health & Human Servs.*, No. 15-869V, 2017 WL 1210083, at *1 (Fed. Cl. Spec. Mstr. Mar. 9, 2017); *Aikin v. Sec'y of Health & Human Servs.*, No. 15–964V, 2016 WL 6080802, at *1 (Fed. Cl. Spec. Mstr. Sept. 19, 2016); *Furniss v. Sec'y of Health & Human Servs.*, No. 14–481V, 2016 WL 3211221, at *1 (Fed. Cl. Spec. Mstr. May 18, 2016). Ms. McCullough's requested hourly rates for her work performed in 2018-2019 have also been previously found reasonable. *See A.W. by & Through Wood v. Sec'y of Health & Human Servs.*, No. 15-1568V, 2019 WL 518521, at *2 (Fed. Cl. Spec. Mstr. Jan. 11, 2019). Thus, I find Mr. Muller's hourly rates for 2015-2018, as well as Ms. McCullough's hourly rates for 2018-2019, to be reasonable and award them as requested.

### i. Paralegal Rates

Similarly, the rate requested for paralegals is in line with what has previously been awarded to Mr. Muller and his associates, and I find them to be reasonable in this case. *See Poulignot-Gartner*, 2017 WL 1210083, at *1; *Aikin*, 2016 WL 6080802, at *1; *Furniss*, 2016 WL 3211221, at *1. Accordingly, no adjustment to the requested rates is required.

### ii. Summary of Hourly Rates Awarded

In light of the above, the hourly rates to be awarded in this instant application are as follows:

|  | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Mr. Maximilian Muller | $255 | $275 | $300 | $317 | $325 |
| Ms. Bridget McCullough | -- | -- | -- | $225 | $225 |
| Ms. Michelle Coles | -- | -- | -- | $125 | -- |
| Ms. Maria Loecker | $125 | $125 | $125 | $125 | -- |
| Ms. Tereza Pavlacsek | -- | -- | -- | $125 | $125 |

Accordingly, Petitioner's requested hourly rates for Mr. Muller, Ms. McCullough, and their paralegals are awarded in full.

3. Reduction of Billable Hours

Based on my review of the billing records submitted with Petitioner's Fees App. (*see generally* Ex. A), I find that Muller Brazil billed hours that I consider "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517 at 1521 (Fed. Cir. 1993). For example, the time entries submitted with the Fees App. reflect that the members of Muller Brazil billed excessively for performing administrative tasks, such as invoicing,

10

reviewing general Court filings, and communicating with their client and expert.[7] Moreover, many of the billing entries also reflect instances vague billing.[8] For such entries, it is impossible to determine the precise portion of the time billed that should be compensated. I note that it is counsel's burden to clearly document the fees claimed. *See Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *8 (Fed. Cl. Spec. Mstr. July 29, 2009); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 2008 U.S. Claims LEXIS 399, at *13-14 (Fed. Cl. Spec. Mstr. Dec. 17, 2008).

For the reasons outlined above, I will reduce the total award of Petitioner's requested attorneys' fees by 10%. This results in a total reduction of Petitioner's Vaccine Act attorneys' fees award by **$4,568.06**.

Therefore, Petitioner is awarded attorneys' fees in the amount of **$41,112.54**.[9]

### B. Reasonable Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec' y of Health & Human Servs.*, 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding such costs. *See, e.g., Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner requests $27,903.17 in attorneys' costs. Fee App. at 2. I note that a total of $542.56[10] in costs were not included in the requested amount but were invoiced in the costs table. Fees App. at 22. Thus, I will base my calculations on a total of **$28,445.73** in attorneys' costs. The requested costs herein can be sorted into two different categories: (1) expert costs and (2) miscellaneous costs, to include costs for lodging, travel, obtaining medical records, and mailing.

### 1. Expert Costs for Petitioner's Expert, Dr. John Santoro

---

[7] Though I agree that continued communication with the client is essential, status updates and requests for medical records can be communicated by paralegals and billed at paralegal rates.

[8] *See generally* Fees App. at Ex. A. Mr. Muller's billing entries for correspondence with both the client and expert were generally vague.

[9]
| Attorneys' fees requested | = | $45, 680.60 |
| Reduction | = | ($4,568.06) |
| **Total awarded Vaccine Act attorneys' fees** | **=** | **$41,112.54** |

[10] It appears that the costs including and below the $78.00 charge for Amtrak were not added into the total. Fees App. at 22.

### i. Expert Hourly Rate

Petitioner requests costs for the work performed by her expert, Dr. John Santoro. Dr. Santoro billed at a rate of $500.00 per hour, for a total of $25,500.00. In examining those billing entries, and taking into account Dr. Santoro's qualifications, expertise in applicable fields of study, level of experience in the program, and testimony at hearing, I find Dr. Santoro's requested rate to be higher than the usual rates awarded to experts with his level of experience in the Program. In fact, even experts with significant experience in the Program are not awarded hourly rates higher than $500 per hour. Further, previous Special Masters have reduced the hourly rate for Dr. Santoro to $400 per hour. *See Ploughe v. Sec'y of Health & Human Servs.*, No. 14-626V, 2017 WL 4455632, at *4–5 (Fed. Cl. Spec. Mstr. Sept. 11, 2017); *Carda v. Sec'y of Health & Human Servs.*, No. 14–191V, 2016 WL 5224406, at *4 (Fed. Cl. Spec. Mstr. Aug. 19, 2016). Thus, I will award Dr. Santoro an hourly rate of $400 per hour.

### ii. Time Expended by Expert

Dr. Santoro invoiced for 28.5 hours spent on preparation of his expert report. Fees App. at 24. He requested fees for an additional 22.5 hours spent preparing for and attending the entitlement hearing. Fees App. at 33.

I find the time billed for report preparation to be excessive. On November 18, 2016, Dr. Santoro submitted his expert report of five pages, providing a short background on the rotavirus vaccination before briefly discussing B.E.'s condition. ECF No. 23. For this report, Dr. Santoro invoiced 10 hours for initial case review, 7.5 hours for records review, 8 hours for literature search, 2 hours for report preparation, and 1 hour for correspondence with the attorney. Fees App. at 24. Given the complexity of the case, I find 25.5 hours to be an excessive amount of time spent on initial case review, records review, and literature search. As such, I will award a total of 18 hours for initial case review, records review, and literature search.[11] I find 3 hours for report preparation and correspondence to be reasonable and will award this amount in full. Accordingly, I will award a total of 21 hours for expert report preparation.

I also find that Dr. Santoro billed excessively for time spent traveling for the hearing, invoicing a total of 15 hours for the day of trial. Fees App. at 33. Time spent traveling is reimbursed at half rate. As evidenced by the attorney invoice, the hearing continued for 6.5 hours. The remainder of Dr. Santoro's time invoiced, 8.5 hours, was spent traveling to and from the hearing. This time will be reduced by half, resulting in a total of 18.25 hours spent on trial preparation and participation.[12]

---

[11] It is not clear from Dr. Santoro's invoice the difference in work performed for the initial case review and the records review. Regardless, I find 17.5 hours to be excessive time spent on case review/records review and will award the greater of the two amounts requested, 10 hours, for case review and records review.

[12]
| | | |
|---|---|---|
| Total Hours Requested for Trial | = | 22.5 |
| Hours Reduction for 8.5 hours of Travel | = | 4.25 |
| **Total Hours awarded** | = | **18.25** |

Therefore, I will award Dr. Santoro a total of 39.25 hours. Accordingly, Dr. Santoro is awarded expert costs of **$15,700.00**, reflecting a reduction of $9,800.00.[13]

### iii. Dr. Santoro's Travel Costs

Dr. Santoro requested a total of $564.84 in travel expenses. Fees App. at 22, 25. Notably, Dr. Santoro utilized an upgraded car service for travel to the hearing. I find this cost to be unreasonable. I will reduce the car service cost to match that of his return Lyft. This results in a total travel cost award of **$466.69**, reflecting a reduction of $98.15.

2. Miscellaneous Costs

I have reviewed all other costs incurred by Muller Brazil, including costs for obtaining medical records, filing fees, and mailing costs. I find the majority of these expenses to be reasonable. I note, however, that the Court no longer pays for the cost of transcripts and, thus I will reduce the requested costs by $640.25. The remaining costs of **$1,740.64** I award in full.

Accordingly, Muller Brazil is awarded a total of **$17,907.33** in attorneys' costs.[14]

**VII. Conclusion**

Based on the foregoing, I hereby **GRANT IN PART** Petitioner's Motion for Attorneys' Fees and Costs, as follows:

|  | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Attorneys' Fees | $45,680.60 | $4,568.06 | $41,112.54 |
| Litigation Costs | $28,445.73 | $11,771.40 | $17,907.33 |
|  |  | **Grand Total:** | **$59,019.87** |

Accordingly, I award a total of **$59,019.87** in attorneys' fees and costs as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel of record, Mr. Maximillian J. Muller, representing attorneys' fees in the amount of $41,112.54, plus costs in the

---

[13] Total Hours Awarded to Dr. Santoro = 39.25
  Rate Reduction = $400.00
**Total Reduction for Dr. Santoro** = **$15,700.00**

[14] Total Costs Requested = $28,445.73
  Reduction in Expert Costs = ($9,800.00)
  Reduction in Expert Travel = ($98.15)
  Reduction in Miscellaneous Costs = ($640.25)
**Total Attorneys' Costs Awarded** = **$17,907.33**

amount of $17,907.33.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court SHALL ENTER JUDGMENT in accordance with this decision.[15]

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.